## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **EDWARD J. BARKES, JR.** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) No.: 19-cv-1191-MMM |
| | ) |
| **STEVEN MEEKS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### MERIT REVIEW ORDER

Plaintiff, proceeding *pro se,* files an action under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### ALLEGATIONS

On December 22, 2018, prior to the events at issue, Plaintiff was incarcerated at the Menard Correctional Center ("Menard"). On January 15, 2009, Dr. Munos, presumably a physician at Menard, prescribed him a nine-week regimen of Klonopin .5 mg daily for treatment of anxiety. Plaintiff was subsequently transferred to Pontiac and, on March 17, 2009, Defendant

1

Dr. Matthews prescribed him Klonopin 1 mg daily for six months. Plaintiff alleges that, for the next 10 years, he was maintained on Klonopin despite the risk of serious side effects, including addiction, dementia, brain damage, nervous system damage, seizures and severe tremors and shaking. Plaintiff alleges that after nine years on the drug, he developed all of these symptoms as well as a life-altering social anxiety.

Plaintiff alleges that Defendant psychiatrists and psychologists Matthews, Dempsey, McCormick, Sangster, Puga and Basu knew that the use of Klonopin for more than a six-month period would result in addiction, dependence and debilitating side effects. He claims that despite this knowledge, Defendants wrongfully maintained him on long-term treatment, failed to adequately monitor the side effects, failed to create a long-term treatment plan to treat the anxiety, and failed to create a treatment plan to address Plaintiff's addiction to Klonopin.

In Count II, Plaintiff asserts a claim against Steven Meeks, the Medical Director of the Illinois Department of Corrections ("IDOC"), and those individuals who preceded him in office. Plaintiff claims that Defendant Meeks and the prior IDOC Medical Directors acted in concert with Wexford Health Sources, Inc., to maintain a formulary of pharmaceuticals to be prescribed to prisoners. Plaintiff asserts that the medical staff was limited to prescribing formulary medications, leading to the over-prescription of Klonopin. Plaintiff also asserts that Defendant Meeks and Wexford, collectively, failed to hire enough staff so that Plaintiff's mental health and neurological status could have been adequately monitored.

In Count III, Plaintiff alleges that Wexford Health Sources, Inc., wrongfully denied him referral to a neurologist. Plaintiff pleads that on October 30, 2018, Nurse Practitioner Sarah Mara, not a party, examined Plaintiff for complaints of dementia, seizures, uncontrollable shaking, and possible brain damage. When Ms. Mara recommended referring Plaintiff to a

2

neurologist, Wexford denied the request. Plaintiff asserts that this denial was in furtherance of Wexford's widespread practice of denying referrals to outside providers in an effort to save money.

Plaintiff names two Doe Defendants in the caption but directs no allegations against them. Plaintiff requests compensatory and punitive damages as well as injunctive relief, that he be referred to a neurologist and that he be provided the treatment recommended by the neurologist.

**ANALYSIS**

Defendants violate the Eighth Amendment where they are deliberately indifferent to a prisoner's serious medical needs. *Snipes v DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), citing *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. 285 (1976). A claim does not rise to the level of an Eighth Amendment violation, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonella v. Sheehan,* 81 F.3d 1422, 1427 (7th Cir. 1996). Mere negligence or even gross negligence does not constitute deliberate indifference. *Snipes,* 95 F.3d at 590 (citations omitted). Furthermore, a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Id.* at 591, citing *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir. 1974).

Plaintiff states a colorable claim that Defendants Matthews, Dempsey, McCormick, Sangster, Puga and Basu maintained him on a decade-long course of Klonopin while allegedly

3

knowing that continual use for more than six months would result in addiction and serious side effects. The case will go forward on this, and the claim that Defendants failed to adequately monitor Plaintiff and create a treatment plan.

Plaintiff fails, however, to plead a claim against Defendants Meeks and Wexford for the alleged over-prescription of Klonopin. Plaintiff does not claim that Klonopin was the only anti-anxiety medication in the formulary and, therefore, the only medication that could have been given. The mere fact that the medication was on the formulary does not make Defendants Meeks or Wexford liable for the physicians and psychologists allegedly over-prescribing it. Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 595–96 (7th Cir.2009). To be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle,* 933 F.Supp.2d 1028, 1037–38 (N.D.Ill.2013) (quoting *Sanville,* 266 F.3d at 740). These claims are DISMISSED though Plaintiff will be given an opportunity to amend in the event that he is able to state a claim.

Plaintiff also asserts that Defendants Meeks and Wexford are liable for not hiring enough staff to adequately monitor him and formulate treatment plans. Here, however, Plaintiff reveals that he was treated by six different mental health providers. He offers nothing to support that, had more providers been available, he would have received better or different treatment. This claim is also DISMISSED though Plaintiff will be given an opportunity to replead it.

Plaintiff also asserts a claim against Wexford under *Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 690-91 ( 1978). *Monell* provides that a private corporation acting under color of law may be liable for a constitutional injury caused by its policies, practices or customs. Here, Plaintiff asserts that a medical professional recommended that he be evaluated by a specialist for alarming neurological symptoms he was experiencing. As Plaintiff asserts that he was injured due to an established Wexford practice of denying such referrals, he sufficiently states a claim.

The two Doe Defendants are DISMISSED for Plaintiff's failure to plead any allegations against them. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998), merely naming a defendant in the caption is insufficient to state a claim.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the following claims that: Defendants Matthews, Dempsey, McCormick, Sangster, Puga and Basu were deliberately indifferent in maintaining Plaintiff on Klonopin for an excessive amount of time, failing to adequately monitor Plaintiff and failing to provide him a treatment plan; and that Defendant Wexford established an unconstitutional practice of denying outside referrals. The allegations that Medical Director Meeks, his predecessors and Wexford established a formulary, limited medical staff to using that formulary and provided inadequate staffing fails to state a claim and is DISMISSED. Any claims not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The two Doe Defendants are DISMISSED.

2. Plaintiff has leave, within 30 days, to file an amended complaint to replead the allegations concerning the establishment of the formulary and the inadequate staffing. Plaintiff's

amended complaint will replace Plaintiff's original complaint in its entirety and must contain all allegations against all Defendants as piecemeal amendments are not accepted. If Plaintiff does not amend, the case shall proceed as identified in paragraph one, supra.

3. Plaintiff files [5], a motion for recruitment of pro bono counsel. The Court does not possess the authority to require an attorney to accept pro bono appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). In determining whether the Court should attempt to find an attorney to voluntarily take a case, the question is whether the plaintiff appears competent to litigate his own claims. *Pruitt* at 655. Plaintiff has filed a comprehensive and articulate complaint, though he claims to have done so with the help of another. At this stage, the Court cannot determine the level of Plaintiff's competence and, therefore, DENIES [5] with leave to reassert as the matter proceeds. Plaintiff's Motion for Status [6] is rendered MOOT.

4. The Clerk is directed to send to each Defendant, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

5. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of

forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

7. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

8. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

9. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

10. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

10/8/2019　　　　　　　　　　　　　　　　s/Michael M. Mihm
ENTERED　　　　　　　　　　　　　　　　MICHAEL M. MIHM
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE